UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TRINITY HOME DIALYSIS, INC., § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | Civil Action No. 3:20-CV-02112-X |
| § | |
| WELLMED NETWORKS, INC., § | |
| § | |
| *Defendant.* § | |
| § | |

### MEMORANDUM OPINION AND ORDER

Trinity Home Dialysis (Trinity) sued WellMed Networks, Inc. (WellMed) in Texas state court. WellMed removed the case to this Court under federal officer removal. Trinity responded with a motion to remand, arguing the removal was inappropriate. [Doc. No. 26]. WellMed, meanwhile filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [Doc. No. 24]. For the reasons stated below, the Court **DENIES** Trinity's motion to remand, **GRANTS** WellMed's motion to dismiss, and **DISMISSES WITHOUT PREJUDICE** these claims.

### I. Factual Background

The Centers for Medicare and Medicaid (the Centers) is the division of the Department of Health and Human Services that administers Medicare benefits to Medicare enrollees. Medicare Part C allows the Centers to contract with private organizations to provide Medicare benefits to enrollees.[1] In turn, these private

---

[1] 42 U.S.C. §§ 1395w-21 to -28.

1

organizations, known as Medicare Advantage Organizations, receive fixed monthly payments from the Centers for each Medicare enrollee they insure. Part C allows the Centers to contractually transfer their responsibility to provide medical insurance (along with the corresponding administrative duties and financial risks) to Medicare enrollees to these third-party Medicare Advantage Organizations.

Medicare Advantage Organizations may fulfill their contractual obligations either by directly providing benefits to the Medicare enrollees they insure or by paying third-party care providers for medical services rendered to the Medicare Advantage Organization's enrollees.[2] If the Medicare Advantage Organization chooses to deal with the provider rather than with the enrollees directly, it may do so either by handling claims for reimbursement by a provider on a case-by-case basis or by entering into a contract with the provider. When a Medicare Advantage Organization contracts with a provider, it "agrees to pay certain rates for certain categories of treatment."[3] Meanwhile, non-contract providers are reimbursed for services they provide to individual enrollees based on the rates set by Medicare regulations.[4]

WellMed is an indirect subsidiary of United HealthCare Services, Inc.[5] Other United HealthCare Services subsidiaries contract with the Centers under Medicare Part C. WellMed, in turn, contracts with these fellow subsidiaries to perform the

---

[2] 42 C.F.R. § 422.214.

[3] *Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584, 587–88 (11th Cir. 2017).

[4] 42 C.F.R. § 422.214.

[5] Doc. No. 25-1 at 1.

contractual obligations they owe to the government. Via these contracts, WellMed performs actions that would otherwise ultimately have to be performed by the Centers themselves.

Trinity is a provider of home dialysis services, medication, and medical treatment provisions and supplies in the Dallas, Texas area. Between 2014 and October 2016, it provided services to WellMed's Medicare enrollees, for which WellMed reimbursed it $388,681. From October 2016 until 2019, Trinity continued to provide services to WellMed's Medicare enrollees, for which it sought $2,089,800 in reimbursement from WellMed.[6] WellMed, however, declined to fully reimburse these services after determining that they did not qualify for Medicare reimbursement. Instead, WellMed offered to pay Trinity $180,632, a figure WellMed claims to have reached by "[determining] the closest approximation for payment as if the Services had been subject to the standard Medicare fee schedule."[7]

Unsatisfied with WellMed's settlement offer, Trinity sued WellMed in Texas state court. WellMed then removed the case to this Court under federal officer removal and filed a motion to dismiss the case based on Trinity's failure to exhaust the administrative remedies made available to it by the Medicare Act, among other reasons. Trinity filed a motion to remand to state court, arguing that this Court lacks subject matter jurisdiction.

---

[6] The parties dispute whether a contract existed between them at any point during these transactions. The parties appeared before the Court for a jurisdictional hearing on the question of whether such a contract existed and related questions. Doc. Nos. 40, 41.

[7] Doc. No. 26-2 at 1.

## II. Legal Standards

Federal officer removal is appropriate where suit is brought in state court against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office."[8]  Because Congress has extended federal officer removal to "any person acting under [a federal] officer,"[9] private organizations like WellMed may invoke federal jurisdiction where the requirements for federal officer removal are otherwise satisfied.  The *en banc* Fifth Circuit, broadening its previous interpretation of section 1442(a), recently explained that federal officer removal is appropriate if (1) the defendant "is a 'person' within the meaning of the statute," (2) "that has acted pursuant to a federal officer's directions," (3) "the charged conduct is connected or associated with an act pursuant to a federal officer's directions," and (4) the "defendant has asserted a colorable federal defense."[10]

Most removal statutes are strictly construed, with any doubts resolved in favor of remand.[11]  But federal officer removal is different: "it is not narrow or limited."[12] And "assessment of whether [federal officer removal] jurisdiction exists must be without a thumb on the remand side of the scale."[13]  Indeed, "[the Supreme] Court

---

[8] 28 U.S.C. § 1442(a)(1).

[9] *Id.*

[10] *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020).

[11] *See Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

[12] *St. Charles Surgical Hosp. v. La. Health Serv.*, 990 F.3d 447 (5th Cir. 2021) (cleaned up).

[13] *Id.* (cleaned up).

has consistently urged courts to avoid 'a narrow, grudging interpretation of § 1442(a)(1).'"[14] Rather, "the statute must be liberally construed."[15]

Meanwhile, under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[16] "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[17] And dismissal is appropriate under Rule 12(b)(6) where the plaintiff fails to state a claim upon which relief can be granted. "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[18]

### III. Analysis

#### A. The Motion to Remand

Federal officer removal is appropriate where (1) the defendant "is a 'person' within the meaning of the statute," (2) "that has acted pursuant to a federal officer's directions," (3) the charged conduct is connected or associated with an act pursuant

---

[14] *Latiolais*, 951 F.3d at 290 (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

[15] *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 150 (2007) (cleaned up).

[16] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

[17] *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986).

[18] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

to a federal officer's directions, and (4) the defendant "has asserted a colorable federal defense."[19]

### 1. WellMed is a person within the meaning of the statute.

WellMed's status as a corporate entity satisfies the first requirement for federal officer jurisdiction.[20]

### 2. WellMed has acted pursuant to a federal officer's directions.

A defendant acts under a federal officer's direction when, through a contract with the government, it performs actions that, "in the absence of [the] contract . . . the Government itself would have had to perform."[21]  Accordingly, actions that the defendant takes to fulfill its contractual obligations to the government are actions taken under the direction of a federal officer.  Even if the defendant has discretion in fulfilling its contractual obligations to the government, the exercise of discretion in fulfilling the task that the government has delegated to the defendant still occurs under a federal officer's direction: "In order to satisfy the 'acting under' requirement, a removing defendant need not show that its alleged conduct was precisely dictated by a federal officer's directive."[22]  WellMed, in performing its contractual obligations, administers the Medicare program on behalf of the federal government pursuant to stringent regulations.  Absent Medicare Advantage Organizations such as WellMed, the Centers would have to administer Medicare benefits themselves.  So, WellMed

---

[19] *Latiolais*, 951 F.3d at 296.

[20] *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 461 (5th Cir. 2016), *overruled on other grounds by Latiolais*, 951 F.3d 286.

[21] *Watson*, 551 U.S. at 154.

[22] *St. Charles Surgical Hosp., LLC*, 990 F.3d 447, 454 (5th Cir. 2021).

has acted pursuant to a federal officer's directions in performing actions that the government itself would otherwise have to perform.

While WellMed is a subcontractor and not technically in privity of contract with the government, that does not change the analysis. After all, while the existence of a contract between the defendant and the federal government can demonstrate that the defendant acted under the direction of a federal officer, the federal officer removal statute imposes no requirement that such a contract exist.[23] In any event, the Court finds persuasive the Fourth Circuit's reasoning in *County Board of Arlington County, Virginia v. Express Scripts Pharmacy, Inc.*[24] There, the Fourth Circuit concluded that a subcontractor could invoke federal officer removal because the government contract expressly contemplated subcontractors and provided various mechanisms of government supervision for these subcontractors.[25] And even as subcontractors, they were still responsible for performing actions that the government would otherwise need to perform itself.[26] So, "the absence of privity of contract between the [subcontractors] and the government [did] not [foreclose removal under section 1442(a)]."[27] Here, the government contract also contemplates subcontractors such as WellMed and provides various mechanisms of government supervision and control over them.[28] Likewise, WellMed performs actions that the

---

[23] *See* 28 U.S.C. § 1442(a)(1).

[24] 996 F.3d 243 (4th Cir. 2021).

[25] *Id.* at 253.

[26] *Id.* at 253–54.

[27] *Id.* at 254.

[28] *See* Doc. No. 1-1 at 78.

7

government itself would otherwise need to perform. So, WellMed's status as a subcontractor does not materially change the analysis.[29]

### 3. WellMed's charged conduct is connected to or associated with an act pursuant to a federal officer's directions.

WellMed makes Medicare reimbursement decisions as a Medicare Advantage Organization based on its contractual obligation to reimburse qualifying Medicare services. Because of WellMed's status as a Medicare Advantage Organization, Trinity submitted claims for Medicare reimbursement to WellMed. Exercising the authority granted to it by the Centers, WellMed determined that Trinity's claims were not eligible for Medicare reimbursement and did not fully reimburse them. As such, WellMed's conduct arose from its obligation to determine whether care qualified for Medicare reimbursement, and to reimburse or not reimburse accordingly. So, the charged conduct is "connected or associated" with an act pursuant to a federal officer's directions.

### 4. WellMed has asserted a colorable federal defense.

The fourth and final requirement for federal officer removal is that the defendant raises a colorable federal defense. "To be 'colorable,' the asserted federal defense need not be 'clearly sustainable,' as section 1442 does not require a federal official or person acting under him 'to win his case before he can have it removed.'"[30]

---

[29] WellMed's contracts are with its fellow subsidiaries of the same parent organization, meaning that an organization operating under the same overarching organizational umbrella as WellMed is in direct privity of contract with the government. This reality may be an independent ground for concluding that WellMed's technical status as a subcontractor does not defeat federal officer removal.

[30] *Latiolais*, 951 F.3d at 29697 (quoting *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999) (cleaned up)).

8

WellMed claims three federal defenses: (1) Trinity's failure to exhaust its administrative remedies, (2) preemption of Trinity's claims under the Medicare Act, and (3) immunity based on WellMed's status as a Medicare carrier acting in its official capacity.

In administering Medicare benefits, Medicare Advantage Organizations like WellMed are responsible for determining whether a given medical treatment or procedure qualifies for Medicare coverage, as well as the rate at which qualifying care is covered or reimbursed.[31] The Medicare regulations call these determinations "organization determinations," and medical care providers like Trinity are expressly included as potential parties to these decisions.[32] The Medicare regulations outline a detailed process whereby these organization determinations may be administratively appealed.[33]

Often where Congress has provided an administrative appeals process, would-be plaintiffs must utilize that process before bringing their case to a federal district court. There is no exception here: an enrollee or a provider like Trinity must exhaust these administrative remedies before suing in a federal district court to challenge an organization determination.[34] As the Eleventh Circuit explained, "[i]f any one of the foregoing parties wishes to challenge any aspect of an organization determination, that party must exhaust its administrative remedies by following a specific procedure

---

[31] 42 U.S.C. § 1395w-22(g)(1)(A); *Tenet*, 875 F.3d at 586.

[32] 42 C.F.R. §§ 422.566, 422.574.

[33] *Id*. §§ 422.560–422.626.

[34] 42 U.S.C. § 1395w-22(g)(5).

9

for administrative appeal prescribed by the Medicare Act and its implementing regulations."[35]

Trinity argues, however, that under *RenCare, Ltd. v. Humana Health Plan of Texas, Inc.*,[36] their claims are excluded from this administrative review process. The Medicare regulations have been updated since *RenCare* was decided in 2004 in ways that may have superseded it. Indeed, courts in other circuits have concluded just that.[37] Trinity does not address these developments. Because Trinity's claims are subject to the administrative review process even under *RenCare*, however, the Court need not consider whether *RenCare* is still good law.

Central to Trinity's argument is its contention that a contract exists between Trinity and WellMed. But if such a contract exists, the terms of that contract are different than the terms of the contract in *RenCare* in a crucial respect: it does not waive Trinity's right to seek payment for its services from the enrollees themselves. In *RenCare*, the contract's waiver of the plaintiff's right to do so was central to the Fifth Circuit's analysis: because of the waiver, no Medicare enrollees were "at risk of being billed for the services that [the plaintiff] provided them," so "there [were] no

---

[35] *Tenet*, 875 F.3d at 587 (citing 42 U.S.C. § 1395w–22(g) and 42 C.F.R. §§ 422.560–422.622); *see also, e.g.*, *Sarene Servs., Inc. v. Empire Blue Cross/Blue Shield*, No. 17-CV-5276, 2019 WL 402858 (E.D.N.Y Jan. 29, 2019).

[36] 395 F.3d 555, (5th Cir. 2004). As WellMed points out, *RenCare* dealt with federal question jurisdiction as opposed to federal officer removal. Trinity fails to address this distinction or explain *RenCare*'s applicability to this different context. Because, as explained below, the Court concludes that WellMed's defense based on Trinity's failure to exhaust administrative remedies is not just a potentially colorable defense, but a winning one, the Court need not address this distinction and its implications.

[37] *See, e.g.*, *Prime Healthcare Servs., Inc. v. Humana Ins. Co.*, No. CV 16-1097 BRO 2016 WL 6591768, at *6 (C.D. Cal. Nov. 4, 2016); *Assocs. Rehab. Recovery v. Humana Med. Plan, Inc.*, 76 F. Supp. 3d. 1388, 1392 (S.D. Fla. 2014).

10

enrollees seeking Medicare benefits."[38]  Because the Medicare administrative review process did "not extend to claims in which an enrollee has absolutely no interest," the Fifth Circuit concluded that the claims in question were not subject to it.[39]  The situation here is very different.  If a contract exists between Trinity and WellMed, it does not include a waiver of Trinity's right to seek payment from the enrollees themselves.

While Trinity claims that it waived its right to seek payment from the enrollees, it fails to argue the basis for this claim or point to anything in the record reflecting such a waiver.[40]  In fact, the only indication of any sort of waiver in the record is in the 2016 Single Case Agreement the parties entered into for one patient.[41]  This waiver—limited by the agreement's own terms to a single enrollee—cannot be plausibly read, standing alone, as creating or reflecting a general waiver term applicable to all of WellMed's enrollees to whom Trinity provided care from 2014 to 2019.  "Dealings between parties may result in an implied contract where the facts show that the minds of the parties met on the terms of the contract without any legally expressed agreement."[42]  Even if there was a general contract between Trinity and WellMed requiring reimbursement, nothing suggests that the parties' minds met

---

[38] *RenCare*, 395 F.3d at 558.

[39] *Id.* at 559.

[40] Doc. No. 26 at 9; Doc. No. 28 at 10.

[41] Doc. No. 21-2 at 2.

[42] *Fraud-Tech, Inc. v. Choicepoint, Inc.*, 102 S.W.3d 366, 386 (Tex. App.—Fort Worth 2003, pet. denied) (cleaned up).

on such a waiver term as to all enrollees.[43] Because Trinity could seek payment directly from the enrollees, these enrollees have an interest in the claims in question. So, even if *RenCare* is still good law, Trinity's claims are subject to the administrative review process under it.[44]

Trinity does not claim to have exhausted its administrative remedies. Because Trinity must do so before it may sue WellMed in this Court, WellMed's federal defense based on Trinity's failure to exhaust its administrative remedies is colorable.

### B. The Motion to Dismiss

Having concluded that WellMed's removal to this Court was proper, the Court turns to WellMed's motion to dismiss. WellMed argues that this Court should dismiss the case under Federal Rule of Civil Procedure 12(b)(1) for a lack of subject matter jurisdiction. Additionally, WellMed argues that the Court should dismiss the case under Rule 12(b)(6) based on Trinity's failure to state a claim upon which relief can be granted.

Dismissal is appropriate under Rule 12(b)(1) where the court lacks subject-matter jurisdiction to adjudicate the case. As discussed above, the Medicare regulations provide care providers like Trinity with an administrative appeals process for resolving reimbursement disputes with Medicare Advantage

---

[43] While Trinity can point to WellMed's years-long pattern of reimbursement as a course of conduct arguably reflecting a meeting of the minds on a contract that required such reimbursement, it cannot point to any course of conduct reflecting a meeting of minds on a waiver term for all enrollees.

[44] And if *RenCare* is no longer good law, Trinity's claims are of course still subject to the administrative review process.

Organizations like WellMed.[45]  By statute, providers must exhaust these administrative remedies before seeking relief in a federal district court.[46]  Trinity does not claim to have exhausted these remedies.  Until Trinity exhausts its administrative remedies, this Court lacks subject matter jurisdiction over its claims.  Therefore, the Court **DISMISSES** Trinity's claims **WITHOUT PREJUDICE** under Rule 12(b)(1).[47]

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** the motion to remand, **GRANTS** the motion to dismiss, and **DISMISSES** the case **WITHOUT PREJUDICE**.

**IT IS SO ORDERED** this 21st day of March, 2022.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[45] 42 U.S.C. § 1395w–22(g); 42 C.F.R. §§ 422.560–422.622; *Tenet*, 875 F.3d at 587.

[46] 42 U.S.C. §§ 405(g), 1395w-22(g)(5).

[47] In light of this ruling, the Court need not reach WellMed's other arguments for dismissal.